N.Y.S.D. Case #
15-cv-0706(DLC)

17-3281
Dhaliwal v. Salix Pharmaceuticals, Ltd.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb 12 2019

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 12th day of February, two thousand nineteen.

Present:      ROSEMARY S. POOLER,
              REENA RAGGI,
                  *Circuit Judges*.[1]

RASVINDER DHALIWAL,

                *Plaintiff-Appellant*,

     v.                                                17-3281-cv

SALIX PHARMACEUTICALS, LTD.,

                *Defendant-Appellee*.[2]

Appearing for Appellant:      Daniel J. Kaiser, Kaiser Saurborn & Mair, P.C., New York, N.Y.

Appearing for Appellee:      David M. Zionts, Covington & Burling, LLP (Benjamin J. Razi, Andrew Leff, *on the brief*), Washington, D.C.

---

[1] Judge Debra Ann Livingston, originally assigned to the panel, recused herself from consideration of this matter. The two remaining members of the panel, who are in agreement, have decided this case in accordance with Second Circuit Internal Operating Procedure E(b). *See* 28 U.S.C. § 46(d); *cf. United States v. Desimone*, 140 F.3d 457, 458 (2d Cir. 1998).

[2] The Clerk of the Court is directed to amend the caption as above.

**CERTIFIED COPY ISSUED ON 02/12/2019**

Appeal from the United States District Court for the Southern District of New York (Cote, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **VACATED IN PART** and **REMANDED**.

Appellant Rasvinder Dhaliwal appeals from the September 15, 2017, judgment of the United States District Court for the Southern District of New York (Cote, *J.*), granting Salix Pharmaceuticals, Ltd.'s ("Salix") motion for summary judgment on Dhaliwal's retaliation claims under the False Claim Act ("FCA"), 31 U.S.C. § 3730(h), and New York False Claims Act ("NYFCA"), N.Y. State Fin. Law § 191. *See generally Dhaliwal v. Salix Pharm., Ltd.*, No. 15cv706 (DLC), 2017 WL 4083180 (S.D.N.Y. Sept. 14, 2017). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

## I. Legal Standards

"We review the district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001). A party is entitled to summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Moreover, "we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (internal quotation marks omitted). We do not "weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact." *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).

To state a claim for retaliation under the FCA, courts "generally require[] a plaintiff to show that (1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 95 (2d Cir. 2017). Additionally, because "[t]he NYFCA follows the federal False Claims Act," New York courts "look toward federal law when interpreting the New York act." *State ex rel. Seiden v. Utica First Ins.*, 943 N.Y.S.2d 36, 39 (1st Dep't 2012); *see also, e.g.*, *United States ex rel. Lee v. N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d 276, 286 (E.D.N.Y. 2016); *New York ex rel. Khurana v. Spherion Corp.*, No. 15 Civ. 6605 (JFK), 2016 WL 6652735, at *17 (S.D.N.Y. Nov. 10, 2016). Our analysis under the FCA thus equally applies to Dhaliwal's NYFCA claims.

## II. Protected Activity and Salix's Awareness

As relevant here, the FCA protects an employee's "lawful acts done . . . in furtherance of . . . efforts to stop 1 or more violations of" the FCA. 31 U.S.C. § 3730(h)(1). We have explained that Congress amended the FCA in 2009 to "broaden[] the universe of protected conduct under § 3730(h), at least with respect to 'efforts to stop' FCA violations." *Chorches*, 865 F.3d at 97 (quoting § 3730(h)(1)). The purpose of the amendment was to make "clear that it covers . . . retaliation against not only those who actually file a qui tam action, but also against those who

2

plan to file a qui tam that never gets filed, who blow the whistle internally or externally without the filing of a qui tam action, or who refuse to participate in the wrongdoing." *Id.* (alteration in original) (internal quotation marks omitted). Thus, it "is enough to show that [a plaintiff's] investigation reasonably could have led to a[n] FCA action." *United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 831 (S.D.N.Y. 2017) (internal quotation marks omitted), *rev'd on other grounds*, 899 F.3d 163 (2d Cir. 2018); *see also, e.g.*, *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998); *Boone v. MountainMade Found.*, 64 F. Supp. 3d 216, 231 (D.D.C. 2014); *United States ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 103 (D. Conn. 2006).

Furthermore, the federal Anti-Kickback Statute makes "clear that a claim that includes items or services resulting from a violation of [that statute] constitutes a false or fraudulent claim for purposes of the" FCA. *Allergan*, 246 F. Supp. 3d at 784 (internal quotation marks omitted) (citing 42 U.S.C. § 1320a-7b(g)). The Anti-Kickback Statute, in turn, forbids providing "anything of value in any form whatsoever" if at least "one purpose of [that direct or indirect] remuneration" is provided "in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." *Allergan*, 246 F. Supp. 3d at 805-06 (internal quotation marks omitted); *see* 42 U.S.C. § 1320a-7b(b)(2).

Here, Dhaliwal claims that she engaged in protected activity when she voiced concerns about particular marketing materials for Solesta (one of Salix's products), payments for continuing medical education programs, price protection arrangements for Xifaxan (another of Salix's products), and a speaker program referred to as "Doc-in-a-Box." With respect to the Solesta marketing materials, the only specific instance Dhaliwal details concerns a slideshow presentation that she contends was rife with falsehoods. However, the actual concerns she raised appear to have had nothing to do with potential false claims. Indeed, Dhaliwal's overarching criticism of the presentation was that it "does not set us [i.e., Salix] up for success." App'x at 216. That is plainly insufficient evidence from which one could infer that Dhaliwal was raising an FCA-related concern. And it certainly falls short of showing that Salix was on notice that Dhaliwal raised FCA-related concerns.

Similarly, Dhaliwal provides insufficient evidence to support her contention that she raised FCA-related concerns about Salix's payment for continuing medical education programs and price protection arrangements for Xifaxan. Dhaliwal points us to nothing in the record indicating that she expressed concerns to anyone at Salix that these practices were illegal or may lead to the submission of false claims. And, more significantly, nothing about the generalized concerns Dhaliwal raised put Salix on notice that she engaged in activity the FCA protects.

With respect to Dhaliwal's concerns regarding the "Doc-in-a-Box" program, however, the district court erred by holding, as a matter of law, that Dhaliwal did not engage in any protected activity. According to Dhaliwal, she attended a "Doc-in-a-Box" event on April 13, 2012. During the cocktail hour portion of the event, Dhaliwal introduced herself to a doctor in attendance whom she did not recognize; that doctor told Dhaliwal that he worked for the Food and Drug Administration (the "FDA"). Evidently alarmed that someone from the FDA was in attendance, Dhaliwal telephoned a Salix supervisor and told that supervisor, "in sum or

3

substance, that an FDA official was in attendance at this dinner and that [she] wanted to raise [her] concerns about the improper marketing activity to Debbie Tanner, a Salix legal/compliance officer." App'x at 781. Despite Dhaliwal's continued insistence, the supervisor ultimately dissuaded Dhaliwal from contacting Salix's legal/compliance department by telling her that he himself would bring Dhaliwal's concerns to legal/compliance.

The district court concluded that Dhaliwal "failed to supply evidence that she was engaged in protected activity," because she did not come forward with "evidence from which one could reasonably infer that her complaints . . . were directed at exposing or avoiding a fraud upon the Government." *Dhaliwal*, 2017 WL 4083180, at *6. For the same reason, the court concluded that Dhaliwal had not shown "that she gave Salix notice of any protected activity." *Id.* In the context of Dhaliwal's claim related to the "Doc-in-a-Box" program, this was an erroneous conclusion because it did not afford Dhaliwal the benefit of all reasonable inferences as required on a motion for summary judgment. *Goord*, 445 F.3d at 534. To the contrary, it appears that the district court drew inferences against Dhaliwal.

A jury could reasonably infer that the reason Dhaliwal claimed the "Doc-in-a-Box" program was "improper" was because it appears to have been a thinly veiled kickback scheme— and thus a violation of the Anti-Kickback Statute and FCA. That Dhaliwal told her supervisor that she wanted to bring her concerns to legal/compliance supports the inference that her concerns were legal related. A reasonable jury could conclude that there was no other legal reason for why the "Doc-in-a-Box" program was improper, aside from the fact that it was a kick-back scheme. Similarly, and in light of the foregoing, we have little trouble concluding that a jury could reasonably conclude that Salix was on notice that Dhaliwal was raising a concern that Salix was potentially committing "1 or more violations of" the FCA. *See* 31 U.S.C. § 3730(h)(1).

### III. Retaliation

The FCA's anti-retaliation provision provides employees with relief for retaliation from their employers "because of lawful acts done by the employee" to further an FCA action "or other efforts to stop 1 or more violations of" the FCA. *Id.* Here, because the district court concluded that Dhaliwal did not show that she engaged in any protected activity, it did not conduct a detailed causation analysis to determine whether Salix retaliated against Dhaliwal on account of her protected activity. *Dhaliwal*, 2017 WL 4083180, at *7. Moreover, the district court had no occasion to consider whether any of the claimed retaliation was *specifically* because of the "Doc-in-a-Box" concerns, the only activity we hold to raise a triable issue of fact.

We therefore remand so that the parties may brief, and district court may determine in the first instance, whether Dhaliwal has adduced sufficient evidence that Salix retaliated against her because she voiced concerns about the "Doc-in-a-Box" program. There is evidence in the record indicating that Dhaliwal suffered personal- and work-related stresses during the latter half of 2012 and that *those* stresses, not retaliation for the April 2012 Doc-in-a-Box complaint, were what caused Dhaliwal to depart from Salix in early 2013. There is also evidence in the record that Dhaliwal had indicated her desire to resign *prior* to her second Doc-in-a-Box complaint on March 12, 2013. Because the district court did not have the opportunity to consider these and

4

other facts, we remand and leave for the district court to rule in the first instance whether there are sufficient factual issues to survive summary judgment that Salix retaliated against Dhaliwal.

    We have considered the remainder of Dhaliwal's arguments and find them to be without merit. Accordingly, the order of the district court hereby is VACATED IN PART and the case is REMANDED for further proceedings consistent with this decision.

                                             FOR THE COURT:
                                             Catherine O'Hagan Wolfe, Clerk