UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
RASVINDER DHALIWAL,                 :
                                    :
                    Plaintiff,      :         15cv706(DLC)
                                    :
         -v-                        :      OPINION AND ORDER
                                    :
SALIX PHARMACEUTICALS, LTD.,        :
                                    :
                    Defendant.      :
                                    :
------------------------------------X

APPEARANCES

For the plaintiff:
Danilo Bandovic
Derek Smith Law Group, PLLC
One Penn Plaza, Suite 4905
New York, New York 10119

For the defendant:
Benjamin J. Razi
Steven Winkelman
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001

DENISE COTE, District Judge:

    Following remand from the Court of Appeals, the defendant

has renewed its motion for summary judgment.  For the following

reasons, the motion is granted.

## Background

    Rasvinder Dhaliwal filed this action on January 30, 2015 as

a qui tam action under the False Claims Act, 31 U.S.C. § 3729-33

("FCA"), and various state false claims laws.  On June 9, 2016, the federal Government elected to intervene, and stipulations of settlement and dismissal were filed by Dhaliwal, the defendant Salix Pharmaceuticals, Ltd. ("Salix") and the Government.  On December 2, a joint notice of dismissal was entered between state governments and Salix.

On December 7, 2016, Dhaliwal gave notice of her intent to pursue her individual surviving claims against Salix.  Following discovery on those individual claims, Salix moved for summary judgment.  On September 14, 2017, this Court granted that motion.  The Court found that Dhaliwal had failed to supply evidence that her complaints to her supervisors regarding four categories of concerns constituted protected conduct under the FCA.  Dhaliwal v. Salix Pharm., Ltd., No. 15CV706 (DLC), 2017 WL 4083180, at *6 (S.D.N.Y. Sept. 14, 2017).  The four categories of concerns related to promotion of a product known as Solesta; to disparities in discounts offered to group purchasing organizations; to budgeting of continuing medical education programs; and to an April 2012 "Doc-in-a-Box" program.  Id. at *1-2.[1]

---

[1] At such "Doc-in-a-Box" events, attendees were supposed to view a pre-recorded educational presentation concerning Salix products.  The presentations were recorded by doctors and played on laptop computers -- hence, a "doc in a box."  The Government's complaint-in-intervention alleged that at many such events Salix representatives did not play the presentation, or

Dhaliwal appealed.  On February 12, 2019, the Court of Appeals vacated in part and remanded the action.  <u>Dhaliwal v. Salix Pharm., Ltd.</u>, 752 F. App'x 99, 102 (2d Cir. 2019) (summary order).  It held that this Court erred in holding that Dhaliwal did not engage in protected activity in connection with one of the four categories: the April 2012 Doc-in-a-Box program.  <u>Id.</u> at 101-02.  The Second Circuit found that a reasonable jury could infer that she told her supervisor that the Doc-in-a-Box program was improper because it appeared to be a thinly veiled kickback scheme.  <u>Id.</u>

The Court of Appeals noted that because of the error, this Court did not conduct a detailed causation analysis to determine whether Salix retaliated against Dhaliwal on account of this protected activity.  <u>Id.</u> at 102.  It instructed this Court to determine whether the plaintiff has adduced evidence, sufficient to warrant a trial, that "Salix retaliated against her because she voiced concerns about the 'Doc-in-a-Box' program."  <u>Id.</u>  It observed that there was evidence that the plaintiff suffered both personal and work-related stresses during the latter half of 2012 and that those stresses, not retaliation, were what caused the plaintiff to depart Salix in early 2013.  <u>Id.</u>

---

played it in a location where it could not be seen and heard by attendees.

On remand, the parties submitted supplemental briefs on the issues identified by the Court of Appeals. They were permitted to rely on the factual record submitted in connection with the defendant's June 16, 2017 motion for summary judgment. They were not permitted additional discovery or to supplement that evidentiary record. The supplemental briefing was fully submitted on July 26, 2019.

In opposition to this renewed motion for summary judgment the plaintiff asserts that she engaged in protected activity on one occasion: In April 2012, she called her supervisor John Temperato to report her concern that a Food and Drug Administration ("FDA") employee attending a Salix program for medical faculty would see the event as improper marketing activity. This is the Doc-in-a-Box complaint that the Court of Appeals has identified as a statement that a jury could find was protected activity.[2]

In opposition to the renewed summary judgment motion, Dhaliwal has also identified three actions that she asserts Salix took against her in retaliation for the concerns she raised in April about the Doc-in-a-Box program. These three actions were (1) withholding third-quarter objectives linked to

---

[2] Dhaliwal has abandoned any claim that she reiterated her concerns about the Doc-in-a-Box program at a dinner meeting with Salix superiors on March 14, 2013.

her compensation until August 14, 2012 and not providing any objectives for the fourth quarter of 2012; (2) offering Dhaliwal a demotion disguised as a promotion on December 20, 2012; and (3) telling Dhaliwal on March 22, 2013 that it was not a good idea for her to come back to Salix.

The following chronology places these issues in context; the facts are undisputed or presented in the light most favorable to Dhaliwal, the non-moving party. Salix hired Dhaliwal in 2005. In 2008, she became a National Accounts Manager ("NAM"). She was promoted to Senior Manager, National Accounts in 2010 and reported to Director of Managed Markets Phillipe Adams and Senior Vice President John Temperato. Dhaliwal had difficulties working with Adams beginning in 2010. As particularly relevant here, Adams provided Dhaliwal with quarterly objectives two to four weeks late beginning in 2011. Salix used such objectives to measure employee performance.

Dhaliwal attended the Doc-in-a-Box program in April 2012. She called Temperato to report her concern that the FDA employee in attendance would see that the event was simply a fun evening for medical faculty. When Dhaliwal said that she would like to convey these concerns to a Salix legal compliance officer, Termperato indicated that he would do so himself.

In February 2012, plaintiff had experienced problems with fumes in her apartment, and was given time off to deal with the

issue.  Around October 29, 2012, Hurricane Sandy hit New York
City and Dhaliwal's apartment lost power, heat, and hot water.
Salix's CEO Carolyn Logan was supportive and offered Dhaliwal
assistance in finding a hotel room.  On November 12, Dhaliwal
wrote to Salix's human resources department indicating that she
would "like to go on short term disability effective
immediately."  She never returned to work.

While on leave, Dhaliwal exchanged text messages with
Logan, explaining that "[it's] been really rough.  [T]he
hurricane was the last thing [I] needed.  [J]ust trying everyday
to get better."  In a December 2012 telephone call, Temperato
informed Dhaliwal that he had created a new position for her
"around Key Opinion Leader development."  This offer constitutes
the second action that Dhaliwal alleges was adverse.

Dhaliwal retained counsel in January 2013.  On March 14,
2013, Dhaliwal met with Logan and Salix's CFO Adam Derbyshire at
a dinner arranged by Dhaliwal's attorney.  According to
Dhaliwal, Logan assured her that she was a valued employee.  On
March 22, Dhaliwal again spoke with Logan and Derbyshire, this
time by telephone.  According to Dhaliwal's notes of the call,
Logan said, "We can't imagine you not being at Salix."  Logan
continued, however, "We both agree it's not a good idea for you
to come back here."  Dhaliwal contends that this statement
terminated her employment.  During the call, Logan also

described a potential severance package for Dhaliwal.  On April 25, Salix asked Dhaliwal to inform it if she would be returning to work by May 2, 2013.  On May 2, Dhaliwal sent a "letter of resignation" to Logan.  In the letter, Dhaliwal asserted that she had been "constructively terminated" and subjected to "such a hostile and retaliatory environment that I have been forced out of the company," but she did not mention the March 22, 2013 call with Logan and Derbyshire.

The Government served a subpoena on Salix on February 1, 2013, requesting documents regarding the sales and promotional practices for certain Salix products.  In 2014, Dhaliwal began cooperating with the federal Government's FCA investigation of Salix.  Dhaliwal had no contact with the Government regarding her allegations of impropriety while she was employed at Salix. Dhaliwal filed this action on January 30, 2015.

## Discussion

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir.

2015) (citation omitted).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015). "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (citation omitted) (emphasis omitted).

　　Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts."  Hicks v. Baines, 593 F.3d 159, 166 (2d

Cir. 2010) (citation omitted).  Only disputes over material
facts will properly preclude the entry of summary judgment.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "An
issue of fact is genuine and material if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  Cross Commerce Media, Inc. v. Collective, Inc., 841
F.3d 155, 162 (2d Cir. 2016).

Salix renews its motion for summary judgment on two
grounds.  It argues that the three acts Dhaliwal asserts were
acts of retaliation (1) do not constitute adverse employment
actions and (2) have no causal relation to Dhaliwal's April 2012
conversation with Temperato about the Doc-in-a-Box program.

The FCA's antiretaliation provision entitles an employee to
relief if that employee is "discriminated against in the terms
and conditions of employment because of lawful acts done by the
employee . . . to stop 1 or more violations of [the FCA]."  31
U.S.C. § 3730(h)(1).  To prevail on an FCA retaliation claim, a
plaintiff must show that "(1) he engaged in activity protected
under the statute, (2) the employer was aware of such activity,
and (3) the employer took adverse action against him because he
engaged in the protected activity."  United States ex rel.
Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.,
865 F.3d 71, 95 (2d Cir. 2017).

The Second Circuit has not defined "adverse action" in the
context of an FCA retaliation claim.  Other circuits have
applied the definition used in Title VII cases, to wit, that an
adverse action "must be materially adverse, which means it well
might have dissuaded a reasonable worker from engaging in
protected activity."  United States ex rel. Bias v. Tangipahoa
Par. Sch. Bd., 816 F.3d 315, 326 (5th Cir. 2016) (citation
omitted); see also Smith v. Clark/Smoot/Russell, 796 F.3d 424,
434 (4th Cir. 2015).  The Second Circuit has likewise relied on
the Title VII standard to analyze other types of retaliation
claims.  See Davis-Garett v. Urban Outfitters, Inc., 921 F.3d
30, 43-44 (2d Cir. 2019) (Age Discrimination in Employment Act
retaliation); Wrobel v. Cty. of Erie, 692 F.3d 22, 31 (2d Cir.
2012) (First Amendment retaliation); Millea v. Metro-N. R. Co.,
658 F.3d 154, 164 (2d Cir. 2011) (Family and Medical Leave Act
retaliation).

While the Second Circuit has not defined the standard of
causation for FCA retaliation claims, the Supreme Court has
written that "[t]he term 'because of' . . . typically imports,
at a minimum, the traditional standard of but-for causation."
EEOC v. Abercrombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2032
(2015); see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S.
338, 347, 360 (2013) (holding that Title VII retaliation claims
"must be proved according to traditional principles of but-for

causation, not the lessened [motivating-factor] causation test,"
and describing but-for causation as the background standard
against which Congress legislates).  Temporal proximity between
the protected activity and the retaliatory action may strengthen
the inference of a causal connection.  See Gorman-Bakos v.
Cornell Co-Op Extension of Schenectady Cty., 252 F.3d 545, 554
(2d Cir. 2001).

"The New York False Claims Act follows the federal False
Claims Act and therefore it is appropriate to look toward
federal law when interpreting the New York act."  State ex rel.
Willcox v. Credit Suisse Sec. (USA) LLC, 36 N.Y.S.3d 89, 90 n.2
(N.Y. App. Div. 2016) (citation omitted).  The following
analysis thus applies equally to Dhaliwal's federal and state
claims.

I.  Delayed or Withheld Objectives

Dhaliwal asserts that one of her supervisors, Adams,
delayed providing her quarterly objectives, and later withheld
those objectives altogether, in retaliation for her conversation
in April 2012 with Temperato about the Doc-in-a-Box program.
Because Dhaliwal has failed to provide evidence from which a
jury could find that these actions were caused by her
conversation with Temperato, Salix is entitled to summary
judgment.

It was Salix's practice to provide NAMs like Dhaliwal with specific company objectives to be accomplished each quarter, and NAMs' bonuses were influenced by their success in achieving those objectives.  Adams was responsible for giving Dhaliwal her quarterly objectives.

It is undisputed that Adams provided Dhaliwal with her objectives for the third quarter of 2012 (which ran from July 1 to September 30) on August 14.  Adams did not provide any objectives to Dhaliwal for the fourth quarter of 2012 (which ran from October 1 to December 31).  Hurricane Sandy hit New York City on October 29.  Dhaliwal took medical leave on November 12, and she never returned to Salix.

It is assumed for purposes of this analysis that refusing to provide an employee with quarterly objectives or substantially delaying delivery of those objectives could constitute an adverse action.  To the extent that such a practice interfered with an employee's ability to receive a bonus or otherwise affected compensation, then a jury may find that it "could well dissuade a reasonable worker" from engaging in protected activity.  Duplan v. City of New York, 888 F.3d 612, 626–27 (2d Cir. 2018) (Title VII).

Dhaliwal has not produced evidence from which a jury could find that Adams's failure to provide her quarterly objectives at the beginning of the third and fourth quarters of 2012 was

caused by her conversation with Temperato in April 2012.
Dhaliwal herself has accused Adams of "consistently" providing
her with objectives late, including for an extended period
before April 2012.  Dhaliwal's own notes record that Adams
provided her objectives two to four weeks late in the last three
quarters of 2011, and seven weeks late in the first quarter of
2012.  Providing her with objectives six weeks late in the third
quarter of 2012 fits with this pattern.  No fact finder could
conclude that the delay in the third quarter of 2012 was due
Dhaliwal's April 2012 conversation with Temperato.  Dhaliwal
also cites no evidence that Adams had any knowledge of her
conversation with Temperato; this constitutes an independent
reason that no reasonable jury could find Adams's actions were
caused by such a conversation.  Given that Hurricane Sandy
occurred in late October and Dhaliwal left Salix in mid-November
never to return, there is even less reason to link the failure
to give Dhaliwal fourth quarter 2012 objectives with the April
2012 conversation.

Dhaliwal argues that Salix must articulate a non-
retaliatory justification for the delay in providing her
objectives to receive summary judgment in its favor.  No such
justification is required where, as here, the plaintiff has
failed to make out a prima facie case of retaliation.  See Tex.
Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)

(noting that the "ultimate burden of persuading the trier of fact . . . remains at all times with the plaintiff"); <u>Bucalo v. Shelter Island Union Free Sch. Dist.</u>, 691 F.3d 119, 129-30 (2d Cir. 2012) (holding that the trier of fact must find that the plaintiff has made out a <u>prima facie</u> case, even when the defendant articulates no non-retaliatory justification).

One element of the required <u>prima facie</u> case is "that there was a causal connection between [the plaintiff] engaging in the protected activity and the adverse employment action." <u>Ya-Chen Chen v. City Univ. of New York</u>, 805 F.3d 59, 70 (2d Cir. 2015) (citation omitted). No reasonable factfinder could find such a causal connection between Dhaliwal's April 2012 conversation with Temperato and the pattern of withholding objectives, which predated that conversation. <u>See</u> <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001), <u>as amended</u> (June 6, 2001) ("Where . . . adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

II.  Offer of a New Position on December 20, 2012

Dhaliwal asserts that Salix created and offered her a new position on December 20, 2012 in retaliation for her April 2012 conversation with Temperato about the Doc-in-a-Box program. On December 20, Dhaliwal was on leave from Salix, and had been so since November 2012. In response to a request from Dhaliwal's

counsel in January 2013, Salix's attorney provided a summary of the new position, which bore the title Key Initiative Manager. Dhaliwal contends that this new position constituted a demotion, principally because the position came with no "apparent upward mobility."

The parties dispute whether the position of Key Initiative Manager represented a demotion or not. It is unnecessary, however, to describe the evidence they offer regarding that dispute. For two independent reasons, Salix has shown that it is entitled to summary judgment on this claim of retaliation.

First, Dhaliwal has failed to establish that the offer of this job constitutes an adverse employment action. She has not presented evidence from which a jury could find that she was required to accept this newly created position in the event she decided to return to work. Being provided the option to change job roles, or to remain in one's current role, would not dissuade a reasonable worker from taking action to prevent the submission of false claims.[3]

---

[3] Dhaliwal also argues that summary judgment is improper because there is a dispute about the date on which a document describing the Key Initiative Manager position was created. Any such dispute would not be material; the date on which the document was created has no bearing on whether the offer of the Key Initiative Manager position was an adverse employment action or causally related to protected activity.

Next, Dhaliwal has failed to provide evidence from which a jury could conclude that this offer, first described to her at the end of December, was made in retaliation for the concerns she raised more than half a year earlier, in April 2012.  In addition to the many months between the two conversations, a number of intervening events make it even less plausible to conclude that the job offer was caused by Dhaliwal's April call to Temperato.  These events include the leave Dhaliwal took in response to Hurricane Sandy, the extended leave from work that Dhaliwal took beginning in late November, and the fact she had still not returned to work by the time Temperato offered her the new position on December 20.  "An intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference."  <u>Nolley v. Swiss Reinsurance Am. Corp.</u>, 857 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) (citing cases), <u>aff'd sub nom.</u> <u>Nolley v. Swiss Re Am. Holding Corp.</u>, 523 F. App'x 53 (2d Cir. 2013).

III.  The March 22, 2013 Telephone Call

Finally, Dhaliwal asserts that Logan's statement during the March 22, 2013 telephone call -- that she agreed it was not a "good idea" for Dhaliwal to return to work -- was an act of retaliation.  Dhaliwal characterizes Logan's statement as a termination of her employment.  Salix has shown that it is also

entitled to summary judgment on this last asserted act of retaliation.

Dhaliwal has failed to offer evidence from which a jury could find that Logan's statement, coupled with the offer of a severance package, was an adverse employment action. As noted, Dhaliwal had retained counsel in January 2013. In early March her attorney wrote to Salix's counsel that "it may no longer be practical or realistic for Ms. Dhaliwal to return to work at Salix." Dhaliwal's attorney attached a proposed settlement agreement that would have, among other things, terminated Dhaliwal's employment and required Salix to make a lump-sum "Salary, Bonus & Severance Payment."[4]

Dhaliwal's effort to characterize the Salix offer of a severance package as a unilateral termination of her employment

---

[4] Dhaliwal objects that her attorney's communications are inadmissible under Federal Rule of Evidence 408, which provides that evidence is not admissible "either to prove or disprove the validity or amount of a disputed claim," if the evidence consists of "a statement made during compromise negotiations about the claim." Dhaliwal's claim here is that her employment was terminated on March 22. Her counsel's March 5 email cannot possibly have been an effort to compromise about the yet-to-accrue termination claim and is thus admissible in adjudicating it. See Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 689 (7th Cir. 2005) ("In deciding whether Rule 408 should be applied to exclude evidence, courts must . . . decide whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations. The balance is especially likely to tip in favor of admitting evidence when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered." (citation omitted)).

does not succeed.  The offer was made in response to her counsel's solicitation.  Moreover, when Dhaliwal did not accept the severance package, Salix inquired by letter whether she intended to return to work.  Dhaliwal submitted a "letter of resignation" on May 2, 2013.  That letter began with the statement:  "For the reasons I've outlined in this letter, it is with regret that I must advise you that I will be unable to return to my position as Sr. Manager, National Accounts, my employment having been constructively terminated by Salix."  The letter then described a laundry list of complaints she had about Salix, but nowhere mentioned the March 22 call that Dhaliwal now asserts terminated her employment.

Despite Dhaliwal's attempt to reframe this sequence of events, no reasonable jury could find that Salix's offer of a severance package was a unilateral termination of Dhaliwal's employment.  Rather, it was a counter-offer to the proposal made by Dhaliwal's attorneys, which likewise would have terminated Dhaliwal's employment.  Indeed, the record shows that Dhaliwal and her attorney understood the March 22 call as part of an ongoing negotiation.  On March 28, Dhaliwal's attorney wrote to Salix's attorney,[5] saying that "Carolyn [Logan] suggested during

_____

[5] Although this email post-dates March 22 and is marked "Settlement Related/Without Prejudice/Inadmissible," it is admissible despite Federal Rule of Evidence 408.  The email never suggests that the March 22 conversation itself was a

18

the [March 22] call with Rose [Dhaliwal] that she was putting

Rose back on the payroll effective March 1, 2013, at least

pending further discussions . . . ."  In that same email,

Dhaliwal's attorney wrote that during the March 22 call Logan

had "seeming [sic] made a separation proposal" and that he had

"been authorized by Rose to make a counter-proposal."  A

reasonable worker would not be dissuaded from reporting fraud by

an employer's willingness to engage in negotiations for a

separation agreement.

Finally, Dhaliwal has not offered sufficient evidence to

permit a jury to find that the April 2012 conversation regarding

the Doc-in-a-Box program prompted the March 2013 offer of a

severance package.  The passage of almost a year between these

events prevents any reasonable inference that they are linked.

There is also undisputed evidence of many intervening events

---

source of liability or that any compromise negotiations were
underway concerning a claim that stemmed from the March 22
conversation.  Thus Rule 408 is no bar to the email's
admissibility concerning the validity of Dhaliwal's claim that
the March 22 conversation was retaliatory.  See PRL USA
Holdings, Inc. v. U.S. Polo Ass'n, Inc., 520 F.3d 109, 114 (2d
Cir. 2008) (noting that Rule 408 permits the admission of
"evidence focused on issues different from the elements of the
primary claim in dispute").  Additionally, if the emails from
Dhaliwal's attorney constitute "statement[s] made during
compromise negotiations," within the meaning of Rule 408, then
Logan's March 22 comment is also such a statement.  Dhaliwal
cannot selectively introduce the portion of the negotiation that
she argues constituted an adverse employment action, while
excluding all surrounding context.

that are more directly linked to the March 2013 proposal --
especially that Dhaliwal had not worked since November 2012 and
that her attorneys had proposed a termination-and-severance
agreement.

Indeed, Dhaliwal does not even seriously argue in opposing
this motion that Logan's comment was caused by the April 2012
conversation. Instead she observes that in February 2013 Salix
received a subpoena from the U.S. Attorney's Office for the
Southern District of New York seeking documents concerning
certain sales and promotional practices. Dhaliwal then suggests
that Logan terminated her, "[e]vidently fearing that Ms.
Dhaliwal was the whistleblower." But there is not a shred of
evidence for this surmise. It is undisputed that Dhaliwal did
not begin cooperating with the Government's investigation until
2014. Dhaliwal offers nothing more than speculation that Salix
might have (incorrectly) believed she was connected to the
subpoena. This is insufficient to create a genuine dispute as
to causation.

## Conclusion

The defendant's renewed motion of July 5, 2019 for summary

judgment is granted.  The Clerk of Court shall enter judgment

for the defendant and close the case.


Dated:    New York, New York
          October 9, 2019

                              _____
                                      DENISE COTE
                              United States District Judge